PINILISHALPERN, LLP
William J. Pinilis (024721992)
160 Morris Street
Morristown, NJ 07960
Tel: (973) 401-1111/Fax: (973) 401-1114
Attorney for Plaintiff
File No.:  12213

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ABIGAIL RATCHFORD, ARIANNY CELESTE LOPEZ, TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, CORA SKINNER, DESSIE MITCHESON, HILLARY HEPNER, RACHEL KOREN, IRINA VORONINA, JESSICA BURCIAGA, JACLYN SWEDBERG, JOANNA KRUPA, JORDAN CARVER, KIMBERLY COZZENS, KRYSTAL HIPWELL, LINA POSADA, LUCY PINDER, ROSIE JONES, MASHA LUND, SANDRA VALENCIA, SARA UNDERWOOD, URSULA MAYES, DENISE MILANI, MELANIE IGLESIAS, RHIAN SUGDEN, CLAUDIA SAMPEDRO, PAOLA CANAS, AND TIFFANY TOTH GRAY,

Plaintiffs,

v.

FOXTAILS LOUNGE,

---

Defendant.

Civil Action No.:

COMPLAINT AND JURY DEMAND FOR:

(1) Misappropriation of Likeness;
(2) Unfair Competition, 15 U.S.C. § 1125(a);
(3) Unfair Competition, N.J.S.A. 56:4-1; and,
(4) Unfair Competition.

Plaintiffs, Abigail Ratchford, Arianny Celeste Lopez, Tara Leigh Patrick a/k/a Carmen

Electra, Cora Skinner, Dessie Mitcheson, Hillary Hepner, Rachel Koren, Irina Voronina, Jessica

Burciaga, Jaclyn Swedberg, Joanna Krupa, Jordan Carver, Kimberly Cozzens, Krystal Hipwell,

Lina Posada, Lucy Pinder, Rosie Jones, Masha Lund, Sandra Valencia, Sara Underwood, Ursula

Mayes, Denise Milani, Melanie Iglesias, Rhian Sugden, Claudia Sampedro, Paola Canas and Tiffany Toth Gray ("Plaintiffs") set forth and allege as follows:

## **INTRODUCTION**

### A.    **PLAINTIFFS**

1.      Plaintiff Abigail Ratchford ("Ratchford") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

2.      Plaintiff Arianny Celeste Lopez ("Lopez") is, and at all times relevant to this action was, a professional model and actress, and a resident of Nevada.

3.      Plaintiff Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

4.      Plaintiff Cora Skinner ("Skinner") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

5.      Plaintiff Dessie Mitcheson ("Mitcheson") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

6.      Plaintiff Hillary Hepner ("Hepner") is, and at all times relevant to this action was, a professional model and actress, and a resident of South Carolina.

7.      Plaintiff Rachel Koren ("Koren") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

8.      Plaintiff Irina Voronina ("Voronina") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

9.      Plaintiff Jessica Burciaga ("Burciaga") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

10.     Plaintiff Jaclyn Swedberg ("Swedberg") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

11.     Plaintiff Joanna Krupa ("Krupa") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

12.     Plaintiff Jordan Carver ("Carver") is, and at all times relevant to this action was, a professional model and actress, and a resident of Florida

13.     Plaintiff Kimberly Cozzens ("Cozzens") is, and at all times relevant to this action was, a professional model and actress, and a resident of Florida.

14.     Plaintiff Krystal Hipwell ("Hipwell") is, and at all times relevant to this action was, a professional model and actress, and a resident of Australia.

15.     Plaintiff Lina Posada ("Posada") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

16.     Plaintiff Lucy Pinder ("Pinder") is, and at all times relevant to this action was, a professional model and actress, and a resident of the United Kingdom.

17.     Plaintiff Rosie Jones ("Jones") is, and at all times relevant to this action was, a professional model and actress, and a resident of the United Kingdom.

18.     Plaintiff Masha Lund ("Lund") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

19.     Plaintiff Sandra Valencia ("Valencia") is, and at all times relevant to this action was, a professional model and actress, and a resident of Colombia.

20.     Plaintiff Sara Underwood ("Underwood") is, and at all times relevant to this action was, a professional model and actress, and a resident of Oregon.

3

21.      Plaintiff Ursula Mayes ("Mayes") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

22.      Plaintiff Denise Milani ("Milani") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

23.      Plaintiff Melanie Iglesias ("Iglesias") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

24.      Plaintiff Rhian Sugden ("Sugden") is, and at all times relevant to this action was, a professional model and actress, and a resident of the United Kingdom.

25.      Plaintiff Claudia Sampedro ("Sampedro") is, and at all times relevant to this action was, a professional model and actress, and a resident of Florida

26.      Plaintiff Paola Canas ("Canas") is, and at all times relevant to this action was, a professional model and actress, and a resident of Florida.

27.      Plaintiff Tiffany Toth Gray ("Gray") is, and at all times relevant to this action was, a professional model and actress, and a resident of California.

**B.      Defendant**

28.      Upon information and belief, Foxtails Lounge ("Foxtails") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 39 South Street, Manville, New Jersey 08835.

29.      Upon information and belief, Foxtails is now, and at all times mentioned herein was, the operator of the Foxtails Lounge, which is a strip club, located at 39 South Street, Manville, New Jersey 08835.

30.      Upon information and belief, Foxtails and/or Foxtails Lounge owns and/or operates (or owned and operated) various social media accounts, including Facebook

4

(https://www.facebook.com/FoxTails-Lounge-331996603553708/), Instagram (https://www.instagram.com/explore/locations/18642238/united-states/manville-new-jersey/foxtails-lounge/?hl=en), Twitter (https://twitter.com/FoxtailLounge?lang=en), through which it promotes its business, solicits customers, and advertises events for Foxtails.

31.     Upon information and belief, Foxtails has, and at all times mentioned herein had, control over the content of its website and social media accounts.

## JURISDICTION AND VENUE

32.     This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs allege violations of 15 U.S.C. §1125, et seq. (the Lanham Act).

33.     Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendant is located in this judicial district.

## FACTUAL BACKGROUND

34.     Each Plaintiff is a professional model and actress who earns a living by commercializing her identity, image, and likeness through negotiated, arms-length transactions with reputable commercial brands and companies.

35.     A model's reputation directly impacts the commercial value associated with the use of her image, likeness, or identity to promote a product or service.

36.     Each Plaintiff expended and continues to expend substantial efforts, resources, and time in building her reputation in the modeling industry.

37.     Each Plaintiff carefully considers the reputation, brand, and type of good or service advertised by any potential client prior to authorizing the use of her image or likeness.

38.     Each Plaintiff's career in modeling, acting, and/or private enterprise has substantial value derived from the goodwill and reputation each has built.   Each Plaintiff commands substantial sums of money for the licensed commercial use of her image.

39.     As set forth herein, Defendant has brazenly and repeatedly, without consent, misappropriated Plaintiffs' images and likenesses and used them in its advertisements for its strip club and commercial gain.

40.     The following are Defendant's respective unauthorized uses of Plaintiffs' respective images identified so far. Upon information and belief, there are additional unauthorized uses by the Defendant of the Plaintiffs' images not yet identified by Plaintiffs.

| *Plaintiff* | *Initial Pub. Date* | *Image URL* |
|---|---|---|
| Ratchford | 11/8/2013 | https://www.facebook.com/331996603553708/photos/a.331998023553566.80772.331996603553708/542660402487326/?type=3&theater |
| Lundberg | 1/16/2013 | https://www.facebook.com/331996603553708/photos/a.331998023553566.80772.331996603553708/402961219790579/?type=3&theater |
| Lopez | 5/23/2014 | https://www.facebook.com/331996603553708/photos/a.331998023553566.80772.331996603553708/639346956152003/?type=3&theater |
| Electra | 7/24/2015 | https://twitter.com/foxtailsnj?lang=en |
| Skinner | 10/31/2012 | https://www.facebook.com/331996603553708/photos/a.331998023553566.80772.331996603553708/370849996335035/?type+3&theater |
| Mayes | 11/21/2012 | https://www.facebook.com/331996603553708/photos/a.331998023553566.80772.331996603553708/378676775552357/?type=3&theater |
| Mitcheson | 12/26/2013 | https://www.facebook.com/331996603553708/photos/a.331998023553566.80772.331996603553708/566732576746775/?type=3&theater |
| Mitcheson | 12/20/2012 | https://www.facebook.com/331996603553708/photos/a.331998023553566.80772.331996603553708/390392664380768/?type=3&theater |
| Mitcheson | 11/6/2013 | https://www.facebook.com/331996603553708/photos/a.331998023553566.0772.331996603553708/541431542610212/?type=3&theater |

| Hepner | 5/7/2014 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/631116960308336/?type=3the ater |
|--------|----------|------|
| Hepner | 11/18/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/548172165269483/?type=3&th eater |
| Burciaga | 11/25/2014 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/736546246432073/?typer=3&t heater |
| Swedberg | 8/6/2014 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/678130618940303/?type=3&th eater |
| Burciaga | 9/27/2013 | https://www.facebook.com/331996603553708/photos/a.33199880 23553566.80772.331996603553708/520413708045329/?type=3&t heater |
| Krupa | 10/1/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/359146834172018/?type=3&th eater |
| Krupa | 5/12/2014 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/633526946734004/?type=3&th eater |
| Krupa | 10/24/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/367936626961/?type=3&theat er |
| Carver | 9/20/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/35513893472808/?type=3&the ater |
| Cozzens | 11/20/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/378344922252209/?type=3&th eater |
| Hipwell | 10/25/2012 | https://facebook.com/FoxTails-Lounge-33199603553708/photos/a.331998023553566/368277799925588 |
| Posada | 1/11/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/400455860041115/?type=3&th eater |
| Posada | 7/31/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/337434939676541/?type=3&th eater |
| Pinder | 1/30/2014 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/584815924988440/?type=3&th eater |
| Pinder | 7/8/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/483052841781416/?type=3&th eater |

| Pinder | 11/7/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/373503669403001/?type=3&th eater |
|---|---|---|
| Pinder | 11/19/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/548768958543137/?type=3&th eater |
| Pinder | 12/18/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/562247617195271/?type=3&th eater |
| Jones | 12/18/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/562247617195271/?type=3&th eater |
| Lund | 12/16/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/388735744546460/?type=3&th eater |
| Valencia | 10/29/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/537543712998995/?type=3&th eater |
| Valencia | 5/6/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/454642377955796/? type=3&theater |
| Underwood | 9/15/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/353357721417596/?type=3&th eater |
| Koren | 10/18/2017 | https://www.instagram.com/p/BaZzEUeHdxK/?taken-by=kingbeachboy |
| Voronia | 10/18/2017 | https://www.instagram.com/p/BaZzEUeHdxK/?taken-by=kingbeachboy |
| Koren | 10/18/2017 | https://www.instagram.com/p/BaZzEUeHdxK/?taken-by=kingbeachboy |
| Voronia | 10/18/2017 | https://www.instagram.com/p/BaZzEUeHdxK/?taken-by=kingbeachboy |
| Sampedro | 11/29/2014 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/738822676204430/?type=3&th eater |
| Milani | 8/1/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/494415913978442/?type=3&th eater |
| Iglesias | 4/4/2013 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/441429129277121/?type=3&th eater |
| Sugden | 9/7/2012 | https://www.facebook.com/331996603553708/photos/a.33199802 3553566.80772.331996603553708/350491628370872/?type=3&th eater |
| Canas | 10/23/2012 | https://www.facebook.com/FoxTails-Lounge-331996603553708/photos/a.331998023553566/367518160001552 |

| Gray | 10/18/2017 | https://www.instagram.com/p/BaZzEUeHdxK/?taken-by=kingbeachboy |
|------|------------|------------------------------------------------------------------|

41.     Defendant's uses of Plaintiffs' images and likenesses was for Defendant's commercial benefit, and falsely suggest Plaintiffs' respective sponsorship, affiliation, and participation in the Defendant's business.

42.     Defendant never sought or obtained permission for any use of any of Plaintiffs' images.

43.     None of the Plaintiffs have ever agreed, nor would they have agreed, to any use by Defendant of their respective images or likenesses to promote Defendant's business.

44.     Defendant have never paid any of the Plaintiffs for their unauthorized uses of Plaintiffs' respective images or likenesses.

45.     Defendant's unauthorized uses of Plaintiffs' respective images and likenesses is knowing, willful, and intentional.

## PLAINTIFFS' ALLEGATIONS

46.     Plaintiffs re-state and re-allege paragraphs 1-45 above, and incorporate the same by reference as though fully set forth herein.

### Plaintiff Abigail Ratchford

47.     Plaintiff Ratchford is a professional model.

48.     In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Ratchford negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

49.     Defendant has never hired or contracted with Plaintiff Ratchford to advertise, promote, market or endorse its business.

50.     In the images used by Defendant to promote its business and advertise upcoming events, Plaintiff Ratchford is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Ratchford.

51.     Defendant's appropriation of the images of Plaintiff Ratchford were for the purpose of advertising or soliciting patronage of the establishments.

52.     Defendant has never sought Plaintiff Ratchford's permission, nor did Plaintiff Ratchford give Defendant permission to use the images to advertise and promote its club.

53.     Defendant have compensated Plaintiff Ratchford for any use of her likeness or image.

54.     Defendant has actual knowledge that they were using Plaintiff Ratchford's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Ratchford's image and identity in total disregard of Plaintiff's rights.

55.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Ratchford's image and likeness.

56.     As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Ratchford's image and likeness, Defendant made profits or gross revenues in an amount to be established at trial.

57.     Plaintiff Ratchford has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Arianny Celeste Lopez**

58.     Plaintiff Lopez is a professional model.

59.     In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Lopez negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

60.     Defendant has never hired or contracted with Plaintiff Lopez to advertise, promote, market or endorse its business.

61.     In the images used by Defendant to promote its business and advertise upcoming events, Plaintiff Lopez is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Lopez.

62.     Defendant's appropriation of the images of Plaintiff Lopez were for the purpose of advertising or soliciting patronage of the establishments.

63.     Defendant has never sought Plaintiff Lopez's permission, nor did Plaintiff Lopez give Defendant permission to use the images to advertise and promote its club.

64.     Defendant have compensated Plaintiff Lopez for any use of her likeness or image.

65.     Defendant has actual knowledge that they were using Plaintiff Lopez's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Lopez's image and identity in total disregard of Plaintiff's rights.

66.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Lopez's image and likeness.

67.     As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Lopez's image and likeness, Defendant made profits or gross revenues in an amount to be established at trial.

68.     Plaintiff Lopez has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Carmen Electra**

69.     Plaintiff Electra is a professional model.

70.     In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Electra negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

71.     Defendant has never hired or contracted with Plaintiff Electra to advertise, promote, market or endorse their businesses.

72.     In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Electra is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Electra.

73.     Defendant's appropriation of the images of Plaintiff Electra were for the purpose of advertising or soliciting patronage of Defendant's establishment.

74.     Defendant has never sought Plaintiff Electra's permission, nor did Plaintiff Electra give Defendant permission to use the images to advertise and promote their clubs.

75.     Defendant has never compensated Plaintiff Electra for any use of her likeness or image.

76.     Defendant has actual knowledge that they were using Plaintiff Electra's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Electra's image and identity in total disregard of Plaintiff's rights.

77.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Electra's image and likeness.

78.     As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Electra's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

79.     Plaintiff Electra has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Cora Skinner**

80.     Plaintiff Skinner is a professional model.

81.     In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Skinner negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

82.     Defendant has never hired or contracted with Plaintiff Skinner to advertise, promote, market or endorse their businesses.

13

83.     In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Skinner is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Skinner.

84.     Defendant's appropriation of the images of Plaintiff Skinner were for the purpose of advertising or soliciting patronage of Defendant's establishment.

85.     Defendant has never sought Plaintiff Skinner's permission, nor did Plaintiff Skinner give Defendant permission to use the images to advertise and promote its club.

86.     Defendant has never compensated Plaintiff Skinner for any use of her likeness or image.

87.     Defendant has actual knowledge that they were using Plaintiff Skinner's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Skinner's image and identity in total disregard of Plaintiff's rights.

88.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Skinner's image and likeness.

89.     As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Skinner's image and likeness, Defendant made profits or gross revenues in an amount to be established at trial.

90.     Plaintiff Skinner has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Dessie Mitcheson**

91.     Plaintiff Mitcheson is a professional model.

14

92.     In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

93.     Defendant has never hired or contracted with Plaintiff Mitcheson to advertise, promote, market or endorse its business.

94.     In the images used by the Defendant to promote its business and advertise upcoming events, Plaintiff Mitcheson is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Mitcheson.

95.     Defendant's appropriation of the images of Plaintiff Mitcheson were for the purpose of advertising or soliciting patronage of Defendant's establishments.

96.     Defendant has never sought Plaintiff Mitcheson's permission, nor did Plaintiff Mitcheson give Defendant permission to use the images to advertise and promote their club.

97.     Defendant has never compensated Plaintiff Mitcheson for any use of her likeness or image.

98.     Defendant has actual knowledge that they were using Plaintiff Mitcheson's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Mitcheson's image and identity in total disregard of Plaintiff's rights.

99.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Mitcheson's image and likeness.

100.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Mitcheson's image and likeness, Defendant made profits or gross revenues in an amount to be established at trial.

101.    Plaintiff Mitcheson has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

## **Plaintiff Hillary Hepner**

102.    Plaintiff Hepner is a professional model.

103.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Hepner negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

104.    Defendant has never hired or contracted with Plaintiff Hepner to advertise, promote, market or endorse their businesses.

105.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Hepner is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Hepner.

106.    Defendant's appropriation of the images of Plaintiff Hepner were for the purpose of advertising or soliciting patronage of Defendant's establishment.

107.    Defendant has never sought Plaintiff Hepner's permission, nor did Plaintiff Hepner give Defendant permission to use the images to advertise and promote their club.

108.   Defendant has never compensated Plaintiff Hepner for any use of her likeness or image.

109.   Defendant has actual knowledge that they were using Plaintiff Hepner's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Hepner's image and identity in total disregard of Plaintiff's rights.

110.   Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Hepner's image and likeness.

111.   As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Hepner's image and likeness, Defendant made profits or gross revenues in an amount to be established at trial.

112.   Plaintiff Hepner has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### **Plaintiff Rachel Koren**

113.   Plaintiff Koren is a professional model.

114.   In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Koren negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

115.   Defendant has never hired or contracted with Plaintiff Koren to advertise, promote, market or endorse their businesses.

116.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Koren is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Koren.

117.    Defendant's appropriation of the images of Plaintiff Koren were for the purpose of advertising or soliciting patronage of Defendant's establishment.

118.    Defendant has never sought Plaintiff Koren's permission, nor did Plaintiff Koren give Defendant permission to use the images to advertise and promote their clubs.

119.    Defendant has never compensated Plaintiff Koren for any use of her likeness or image.

120.    Defendant has actual knowledge that they were using Plaintiff Koren's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Koren's image and identity in total disregard of Plaintiff's rights.

121.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Koren's image and likeness.

122.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Koren's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

123.    Plaintiff Koren has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### **Plaintiff Irina Voronina**

124.    Plaintiff Voronina is a professional model.

18

125.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Voronina negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

126.    Defendant has never hired or contracted with Plaintiff Voronina to advertise, promote, market or endorse their businesses.

127.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Voronina is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Voronina.

128.    Defendant's appropriation of the images of Plaintiff Voronina were for the purpose of advertising or soliciting patronage of Defendant's establishment.

129.    Defendant has never sought Plaintiff Voronina's permission, nor did Plaintiff Voronina give Defendant permission to use the images to advertise and promote their clubs.

130.    Defendant has never compensated Plaintiff Voronina for any use of her likeness or image.

131.    Defendant has actual knowledge that they were using Plaintiff Voronina's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Voronina's image and identity in total disregard of Plaintiff's rights.

132.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Voronina's image and likeness.

133.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Voronina's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

134.    Plaintiff Voronina has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### Plaintiff Jessica Burciaga

135.    Plaintiff Burciaga is a professional model.

136.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

137.    Defendant has never hired or contracted with Plaintiff Burciaga to advertise, promote, market or endorse their businesses.

138.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Burciaga is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Burciaga.

139.    Defendant's appropriation of the images of Plaintiff Burciaga were for the purpose of advertising or soliciting patronage of Defendant's establishment.

140.    Defendant has never sought Plaintiff Burciaga's permission, nor did Plaintiff Burciaga give Defendant permission to use the images to advertise and promote their clubs.

141.    Defendant has never compensated Plaintiff Burciaga for any use of her likeness or image.

142.    Defendant has actual knowledge that they were using Plaintiff Burciaga's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Burciaga's image and identity in total disregard of Plaintiff's rights.

143.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Burciaga's image and likeness.

144.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Burciaga's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

145.    Plaintiff Burciaga has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### Plaintiff Jaclyn Swedberg

146.    Plaintiff Swedberg is a professional model.

147.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Swedberg negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

148.    Defendant has never hired or contracted with Plaintiff Swedberg to advertise, promote, market or endorse their businesses.

149.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Swedberg is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Swedberg.

150.    Defendant's appropriation of the images of Plaintiff Swedberg were for the purpose of advertising or soliciting patronage of Defendant's establishment.

151.    Defendant has never sought Plaintiff Swedberg's permission, nor did Plaintiff Swedberg give Defendant permission to use the images to advertise and promote their clubs.

152.    Defendant has never compensated Plaintiff Swedberg for any use of her likeness or image.

153.    Defendant has actual knowledge that they were using Plaintiff Swedberg's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Swedberg's image and identity in total disregard of Plaintiff's rights.

154.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Swedberg's image and likeness.

155.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Swedberg's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

156.    Plaintiff Swedberg has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Joanna Krupa**

157.     Plaintiff Krupa is a professional model.

158.     In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Krupa negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

159.     Defendant has never hired or contracted with Plaintiff Krupa to advertise, promote, market or endorse their businesses.

160.     In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Krupa is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Krupa.

161.     Defendant's appropriation of the images of Plaintiff Krupa were for the purpose of advertising or soliciting patronage of Defendant's establishment.

162.     Defendant has never sought Plaintiff Krupa's permission, nor did Plaintiff Krupa give Defendant permission to use the images to advertise and promote their clubs.

163.     Defendant has never compensated Plaintiff Krupa for any use of her likeness or image.

164.     Defendant has actual knowledge that they were using Plaintiff Krupa's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Krupa's image and identity in total disregard of Plaintiff's rights.

165.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Krupa's image and likeness.

166.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Krupa's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

167.    Plaintiff Krupa has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Jordan Carver**

168.    Plaintiff Carver is a professional model.

169.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Carver negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

170.    Defendant has never hired or contracted with Plaintiff Carver to advertise, promote, market or endorse their businesses.

171.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Carver is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Carver.

172.    Defendant's appropriation of the images of Plaintiff Carver were for the purpose of advertising or soliciting patronage of Defendant's establishment.

173.    Defendant has never sought Plaintiff Carver's permission, nor did Plaintiff Carver give Defendant permission to use the images to advertise and promote their clubs.

174.   Defendant has never compensated Plaintiff Carver for any use of her likeness or image.

175.   Defendant has actual knowledge that they were using Plaintiff Carver's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Carver's image and identity in total disregard of Plaintiff's rights.

176.   Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Carver's image and likeness.

177.   As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Carver's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

178.   Plaintiff Carver has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Kimberly Cozzens**

179.   Plaintiff Cozzens is a professional model.

180.   In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Cozzens negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

181.   Defendant has never hired or contracted with Plaintiff Cozzens to advertise, promote, market or endorse their businesses.

182.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Cozzens is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Cozzens.

183.    Defendant's appropriation of the images of Plaintiff Cozzens were for the purpose of advertising or soliciting patronage of Defendant's establishment.

184.    Defendant has never sought Plaintiff Cozzens's permission, nor did Plaintiff Cozzens give Defendant permission to use the images to advertise and promote their clubs.

185.    Defendant has never compensated Plaintiff Cozzens for any use of her likeness or image.

186.    Defendant has actual knowledge that they were using Plaintiff Cozzens's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Cozzens's image and identity in total disregard of Plaintiff's rights.

187.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Cozzens's image and likeness.

188.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Cozzens's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

189.    Plaintiff Cozzens has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Krystal Hipwell**

190.    Plaintiff Hipwell is a professional model.

26

191.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Hipwell negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

192.    Defendant has never hired or contracted with Plaintiff Hipwell to advertise, promote, market or endorse their businesses.

193.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Hipwell is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Hipwell.

194.    Defendant's appropriation of the images of Plaintiff Hipwell were for the purpose of advertising or soliciting patronage of Defendant's establishment.

195.    Defendant has never sought Plaintiff Hipwell's permission, nor did Plaintiff Burciaga give Defendant permission to use the images to advertise and promote their clubs.

196.    Defendant has never compensated Plaintiff Hipwell for any use of her likeness or image.

197.    Defendant has actual knowledge that they were using Plaintiff Hipwell's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Hipwell's image and identity in total disregard of Plaintiff's rights.

198.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Hipwell's image and likeness.

199.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Hipwell's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

200.    Plaintiff Hipwell has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### Plaintiff Lina Posada

201.    Plaintiff Posada is a professional model.

202.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

203.    Defendant has never hired or contracted with Plaintiff Posada to advertise, promote, market or endorse their businesses.

204.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Posada is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Posada.

205.    Defendant's appropriation of the images of Plaintiff Posada were for the purpose of advertising or soliciting patronage of Defendant's establishment.

206.    Defendant has never sought Plaintiff Posada's permission, nor did Plaintiff Posada give Defendant permission to use the images to advertise and promote their clubs.

207.    Defendant has never compensated Plaintiff Posada for any use of her likeness or image.

208.    Defendant has actual knowledge that they were using Plaintiff Posada's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Posada's image and identity in total disregard of Plaintiff's rights.

209.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Posada's image and likeness.

210.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Posada's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

211.    Plaintiff Posada has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Lucy Pinder**

212.    Plaintiff Pinder is a professional model.

213.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Pinder negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

214.    Defendant has never hired or contracted with Plaintiff Pinder to advertise, promote, market or endorse their businesses.

215.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Pinder is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Pinder.

216.    Defendant's appropriation of the images of Plaintiff Pinder were for the purpose of advertising or soliciting patronage of Defendant's establishment.

217.    Defendant has never sought Plaintiff Pinder's permission, nor did Plaintiff Pinder give Defendant permission to use the images to advertise and promote their clubs.

218.    Defendant has never compensated Plaintiff Pinder for any use of her likeness or image.

219.    Defendant has actual knowledge that they were using Plaintiff Pinder's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Pinder's image and identity in total disregard of Plaintiff's rights.

220.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Pinder's image and likeness.

221.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Pinder's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

222.    Plaintiff Pinder has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Rosie Jones**

223.    Plaintiff Jones is a professional model.

224.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Jones negotiated and expressly granted

authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

225.    Defendant has never hired or contracted with Plaintiff Jones to advertise, promote, market or endorse their businesses.

226.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Jones is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Jones.

227.    Defendant's appropriation of the images of Plaintiff Jones were for the purpose of advertising or soliciting patronage of Defendant's establishment.

228.    Defendant has never sought Plaintiff Jones' permission, nor did Plaintiff Jones give Defendant permission to use the images to advertise and promote their clubs.

229.    Defendant has never compensated Plaintiff Jones for any use of her likeness or image.

230.    Defendant has actual knowledge that they were using Plaintiff Jones' image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Jones' image and identity in total disregard of Plaintiff's rights.

231.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Jones' image and likeness.

232.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Jones' image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

233.    Plaintiff Jones has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the

31

commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

## Plaintiff Masha Lund

234.    Plaintiff Lund is a professional model.

235.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Lund negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

236.    Defendant has never hired or contracted with Plaintiff Lund to advertise, promote, market or endorse their businesses.

237.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Lund is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Lund.

238.    Defendant's appropriation of the images of Plaintiff Lund were for the purpose of advertising or soliciting patronage of Defendant's establishment.

239.    Defendant has never sought Plaintiff Lund's permission, nor did Plaintiff Lund give Defendant permission to use the images to advertise and promote their clubs.

240.    Defendant has never compensated Plaintiff Lund for any use of her likeness or image.

241.    Defendant has actual knowledge that they were using Plaintiff Lund's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Lund's image and identity in total disregard of Plaintiff's rights.

242.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Lund's image and likeness.

243.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Lund's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

244.    Plaintiff Lund has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Sandra Valencia**

245.    Plaintiff Valencia is a professional model.

246.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Valencia negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

247.    Defendant has never hired or contracted with Plaintiff Valencia to advertise, promote, market or endorse their businesses.

248.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Valencia is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Valencia.

249.    Defendant's appropriation of the images of Plaintiff Valencia were for the purpose of advertising or soliciting patronage of Defendant's establishment.

250.   Defendant has never sought Plaintiff Valencia's permission, nor did Plaintiff Valencia give Defendant permission to use the images to advertise and promote their clubs.

251.   Defendant has never compensated Plaintiff Valencia for any use of her likeness or image.

252.   Defendant has actual knowledge that they were using Plaintiff Valencia's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Valencia's image and identity in total disregard of Plaintiff's rights.

253.   Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Valencia's image and likeness.

254.   As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Valencia's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

255.   Plaintiff Valencia has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Sara Underwood**

256.   Plaintiff Underwood is a professional model.

257.   In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

34

258.    Defendant has never hired or contracted with Plaintiff Underwood to advertise, promote, market or endorse their businesses.

259.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Underwood is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Underwood.

260.    Defendant's appropriation of the images of Plaintiff Underwood were for the purpose of advertising or soliciting patronage of Defendant's establishment.

261.    Defendant has never sought Plaintiff Underwood's permission, nor did Plaintiff Underwood give Defendant permission to use the images to advertise and promote their clubs.

262.    Defendant has never compensated Plaintiff Underwood for any use of her likeness or image.

263.    Defendant has actual knowledge that they were using Plaintiff Underwood's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Underwood's image and identity in total disregard of Plaintiff's rights.

264.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Underwood's image and likeness.

265.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Underwood's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

266.    Plaintiff Underwood has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the

commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Ursula Mayes**

267. Plaintiff Mayes is a professional model.

268. In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Mayes negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

269. Defendant has never hired or contracted with Plaintiff Mayes to advertise, promote, market or endorse their businesses.

270. In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Mayes is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Mayes.

271. Defendant's appropriation of the images of Plaintiff Mayes were for the purpose of advertising or soliciting patronage of Defendant's establishment.

272. Defendant has never sought Plaintiff Mayes' permission, nor did Plaintiff Mayes give Defendant permission to use the images to advertise and promote their clubs.

273. Defendant has never compensated Plaintiff Mayes for any use of her likeness or image.

274. Defendant has actual knowledge that they were using Plaintiff Mayes' image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Mayes' image and identity in total disregard of Plaintiff's rights.

275.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Mayes' image and likeness.

276.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Mayes' image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

277.    Plaintiff Mayes has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### Plaintiff Denise Milani

278.    Plaintiff Milani is a professional model.

279.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Milani negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

280.    Defendant has never hired or contracted with Plaintiff Milani to advertise, promote, market or endorse their businesses.

281.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Milani is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Milani.

282.    Defendant's appropriation of the images of Plaintiff Milani were for the purpose of advertising or soliciting patronage of Defendant's establishment.

283.    Defendant has never sought Plaintiff Milani's permission, nor did Plaintiff Milani give Defendant permission to use the images to advertise and promote their clubs.

284.    Defendant has never compensated Plaintiff Milani for any use of her likeness or image.

285.    Defendant has actual knowledge that they were using Plaintiff Milani's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Milani's image and identity in total disregard of Plaintiff's rights.

286.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Milani's image and likeness.

287.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Milani's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

288.    Plaintiff Milani has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### Plaintiff Melanie Iglesias

289.    Plaintiff Iglesias is a professional model.

290.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Iglesias negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

291.     Defendant has never hired or contracted with Plaintiff Iglesias to advertise, promote, market or endorse their businesses.

292.     In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Iglesias is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Iglesias.

293.     Defendant's appropriation of the images of Plaintiff Iglesias were for the purpose of advertising or soliciting patronage of Defendant's establishment.

294.     Defendant has never sought Plaintiff Iglesias's permission, nor did Plaintiff Iglesias give Defendant permission to use the images to advertise and promote their clubs.

295.     Defendant has never compensated Plaintiff Iglesias for any use of her likeness or image.

296.     Defendant has actual knowledge that they were using Plaintiff Iglesias' image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Iglesias' image and identity in total disregard of Plaintiff's rights.

297.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Iglesias' image and likeness.

298.     As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Iglesias' image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

299.     Plaintiff Iglesias has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Rhian Sugden**

300.    Plaintiff Sugden is a professional model.

301.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Sugden negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

302.    Defendant has never hired or contracted with Plaintiff Sugden to advertise, promote, market or endorse their businesses.

303.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Sugden is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Sugden.

304.    Defendant's appropriation of the images of Plaintiff Sugden were for the purpose of advertising or soliciting patronage of Defendant's establishment.

305.    Defendant has never sought Plaintiff Sugden's permission, nor did Plaintiff Sugden give Defendant permission to use the images to advertise and promote their clubs.

306.    Defendant has never compensated Plaintiff Sugden for any use of her likeness or image.

307.    Defendant has actual knowledge that they were using Plaintiff Sugden's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Sugden's image and identity in total disregard of Plaintiff's rights.

308.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Sugden's image and likeness.

309.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Sugden's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

310.    Plaintiff Sugden has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

### Plaintiff Claudia Sampedro

311.    Plaintiff Sampedro is a professional model.

312.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Sampedro negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

313.    Defendant has never hired or contracted with Plaintiff Sampedro to advertise, promote, market or endorse their businesses.

314.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Sampedro is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Sampedro.

315.    Defendant's appropriation of the images of Plaintiff Sampedro were for the purpose of advertising or soliciting patronage of Defendant's establishment.

316.    Defendant has never sought Plaintiff Sampedro's permission, nor did Plaintiff Sampedro give Defendant permission to use the images to advertise and promote their clubs.

317.    Defendant has never compensated Plaintiff Sampedro for any use of her likeness or image.

318.    Defendant has actual knowledge that they were using Plaintiff Sampedro's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Sampedro's image and identity in total disregard of Plaintiff's rights.

319.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Sampedro's image and likeness.

320.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Sampedro's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

321.    Plaintiff Sampedro has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Paola Canas**

322.    Plaintiff Canas is a professional model.

323.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Canas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

324.    Defendant has never hired or contracted with Plaintiff Canas to advertise, promote, market or endorse their businesses.

325.     In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Canas is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Canas.

326.     Defendant's appropriation of the images of Plaintiff Canas were for the purpose of advertising or soliciting patronage of Defendant's establishment.

327.     Defendant has never sought Plaintiff Canas' permission, nor did Plaintiff Canas give Defendant permission to use the images to advertise and promote their clubs.

328.     Defendant has never compensated Plaintiff Canas for any use of her likeness or image.

329.     Defendant has actual knowledge that they were using Plaintiff Canas' image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Canas' image and identity in total disregard of Plaintiff's rights.

330.     Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Canas' image and likeness.

331.     As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Canas' image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

332.     Plaintiff Canas has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

**Plaintiff Tiffany Toth Gray**

333.     Plaintiff Gray is a professional model.

334.    In all prior instances of authorized commercial marketing and promotion of her image, likeness or identity by third parties, Plaintiff Gray negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

335.    Defendant has never hired or contracted with Plaintiff Gray to advertise, promote, market or endorse their businesses.

336.    In the images used by Defendant to promote their businesses and advertise upcoming events, Plaintiff Gray is readily identifiable in that any person seeing the photograph with the naked eye can reasonably determine that the person depicted is Plaintiff Gray.

337.    Defendant's appropriation of the images of Plaintiff Gray were for the purpose of advertising or soliciting patronage of Defendant's establishment.

338.    Defendant has never sought Plaintiff Gray's permission, nor did Plaintiff Gray give Defendant permission to use the images to advertise and promote their clubs.

339.    Defendant has never compensated Plaintiff Gray for any use of her likeness or image.

340.    Defendant has actual knowledge that they were using Plaintiff Gray's image without necessary compensation or consent. Accordingly, Defendant knowingly misappropriated Plaintiff Gray's image and identity in total disregard of Plaintiff's rights.

341.    Defendant derived a direct commercial benefit from their unauthorized use of Plaintiff Gray's image and likeness.

342.    As a direct and proximate result of Defendant's unauthorized uses of Plaintiff Gray's image and likeness, Defendant's made profits or gross revenues in an amount to be established at trial.

343.    Plaintiff Gray has further been damaged as a direct and proximate result of Defendant's unauthorized use of her images, as she has lost her exclusive right to control the commercial exploitation of her name, photographs, and likeness, resulting in damages, the total amount of which will be established by proof at trial.

## COUNT I
### Misappropriation of Likeness

344.    Plaintiffs re-state and re-allege paragraphs 1 through 343 above, and incorporate the same by reference as though fully set forth herein.

345.    Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under New Jersey law, the unauthorized use of a person's image or likeness for a predominately commercial purpose is unlawful.

346.    Defendant's uses of Plaintiffs' images and likenesses to advertise its business constitute a use for commercial purposes.

347.    Defendant's uses of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value.

348.    Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

349.    Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

350.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's strip clubs, Defendant enjoyed increased revenues and profits.

351.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

## COUNT II
### Unfair Competition / False Endorsement
### Lanham Act, 15 U.S.C. §1125(a)

352.    Plaintiffs re-state and re-allege paragraphs 1 through 339 above, and incorporate the same by reference as though fully set forth herein.

353.    Plaintiffs, through their careers in modeling, advertising, and acting, have all attained significant fame and celebrity.

354.    Each Plaintiff enjoys a substantial social media following and has appeared in publications, television, and/or movies as described above.

355.    Each Plaintiff earns her living by commercializing her identity for use by reputable brands and services through arms-length negotiated transactions.

356.    Each Plaintiff possesses a valid and protectable mark in the form of her persona, image, likeness, and identity.

357.    Each Plaintiff has, and at all times mentioned herein, possessed, maintained, and safeguarded her exclusive right to control the use of her persona, image, likeness, and identity.

358.    Prior to authorizing the use of her image, likeness, or identity, each Plaintiff carefully considers the reputation of the potential client and the good or service being promoted.

359.    Without consent, Defendant placed Plaintiffs' respective images and likeness on advertisements promoting its strip club business.

360.    In Defendant's advertisements that contain Plaintiffs' images and likenesses, Plaintiffs are clearly depicted and readily identifiable.

361.    Plaintiffs and the Defendant are all in the entertainment industry and use similar marketing channels, including social media.

362.    Defendant misappropriated Plaintiffs' respective images and likenesses in order to create the false impression that Plaintiffs are somehow affiliated with, have endorsed, or otherwise participate in Defendant's strip club business.

363.    Defendant never sought any Plaintiff's consent to use any image or likeness.

364.    Plaintiffs never participated in, affiliated with, or endorsed Defendant's strip club business.

365.    Plaintiffs would not agree to allow their image or likeness to be used to promote Defendant's strip club business.

366.    Defendant, at all times mentioned herein, knew that it had no right to use Plaintiffs' images or likenesses to promote its strip club business.

367.    Plaintiffs, through their careers in modelling and acting, are well known among the customer base, which Defendant sought to reach with its advertisements.

368.    Indeed, Defendant chose Plaintiffs precisely because of their level of recognition among the demographic of consumers Defendant targets with its advertisements.

369.    Defendant clearly intended to create the false impression that Plaintiffs performed at or otherwise endorsed Defendant's business.

370.    Defendant placed the misappropriated images on the very same marketing channels (i.e. Facebook, Instagram, and Twitter) used by Plaintiffs to promote themselves.

371.    Defendant's misappropriation of Plaintiffs' respective images is likely to cause confusion as to Plaintiffs' affiliation with, sponsorship of, and/or participation in Defendant's strip club business.

372.    Upon information and belief, Defendant's misappropriation has caused actual confusion among consumers as to Plaintiffs' affiliation with, endorsement of, and participation in Defendant's strip club business.

373.    Defendant knew or should have known that, given Plaintiffs' careers as professional models, obtaining the right to use their images and likenesses would have required consent and compensation.

374.    Defendant's repeated and brazen unauthorized uses of Plaintiffs' images and likenesses, without seeking their consent, constitutes willful and deliberate conduct.

375.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's strip club, Defendant enjoyed increased revenues and profits.

376.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

## COUNT III
### Unfair Competition / False Endorsement
### N.J.S.A. 56:4-1, et seq.

377.    Plaintiffs re-state and re-allege paragraphs 1 through 376 above, and incorporate the same by reference as though fully set forth herein.

378.    The aforesaid acts of Defendant's unauthorized uses of Plaintiffs' images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendant's business constitutes unfair competition under N.J.S.A. 56:4-1.

379.    As a direct and proximate result of Defendant's schemes to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's strip club, Defendant enjoyed increased revenues and profits.

380.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

381.    Defendant's wrongful and deliberate conduct has caused significant damage to Plaintiffs, both directly and indirectly, and Plaintiffs respectfully request treble damages as authorized by N.J.S.A. 56:4-2.

## COUNT IV
## Common Law Unfair Competition

382.    Plaintiffs re-state and re-allege paragraphs 1 through 381 above, and incorporate the same by reference as though fully set forth herein.

383.    The aforesaid acts of Defendant's unauthorized use of Plaintiffs' images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendant's business constitutes unfair competition under the common law of New Jersey.

384.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's strip club, Defendant enjoyed increased revenues and profits.

385.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendant as follows:

1.      For actual, consequential, and incidental damages in an amount to be proven at trial;

2.      For the amount due, owing and unpaid to Plaintiffs representing the fair market value of their services;

3.      For trebling of damages;

49

4.      For punitive damages in an amount to be proven at trial;

5.      For prejudgment interest in an amount proscribed by law;

6.      For disgorgement of Defendant's profits;

7.      For costs of this lawsuit including reasonable attorney's fees; and

8.      For such other and further relief as to this court seem just, proper and equitable.

## JURY DEMAND

Plaintiffs hereby demand trial by jury as to all issues in the above matter.

PINILISHALPERN, LLP
160 Morris Street
Morristown, New Jersey 07960
Telephone: (973) 401-1111
Facsimile: (973) 401-1114

Date: ~~February~~ March 10, 2022

William J. Pinilis
wpinilis@consumerfraudlawyer.com